UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
REAGAN EMILIO SANCHEZ ATZ,

                Petitioner,

          - against-

KRISTI NOEM, *in her official capacity as*
*Secretary of the U.S. Department of Homeland Security*;
TODD LYONS *in his official capacity as Acting*
*Director of U.S. Immigration and Customs Enforcement*;
KENNETH GENALO, *in his official capacity as Field*
*Office Director of Enforcement and Removal Operations*
*of the New York Office of U.S. Immigration*
*and Customs Enforcement*; PAMELA BONDI, *in her*
*official capacity as U.S. Attorney General*; and
RAUL MALDONADO, JR., *in his official capacity*
*as Warden of the Metropolitan Detention Center*,

                Respondents.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00214 (OEM)

ORELIA E. MERCHANT, United States District Judge:

Petitioner Reagan Emilio Sanchez Atz ("Petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE"). *See* Petitioner Reagan Emilio Sanchez Atz's Verified Petition for Writ of Habeas Corpus, Dkt. 1 (the "Petition" or "Pet."). ICE arrested Petitioner on September 25, 2025, in Poughkeepsie, New York, and he is currently detained at the Metropolitan Detention Center (the "MDC") in Brooklyn, New York. *Id.* ¶ 1. Petitioner challenges his arrest and detention as violations of the Fourth Amendment and Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 5-6. For the following reasons, the Petition is granted.

1

## BACKGROUND

Although the parties' papers do not affirmatively state Petitioner's nationality, Petitioner appears to be a citizen and native of Guatemala. *See* Declaration of Frank Franco ¶ 10, Dkt. 15-1 ("Franco Decl."). He entered the United States on three different occasions in July 2022, and each time he was neither paroled, released, or otherwise permitted to enter the United States. *Id.* ¶¶ 3-5. Less than two months later, on September 24, 2022, U.S. Customs and Border Patrol (the "CBP") again encountered Petitioner at or near the Southern border. *Id.* ¶ 6. CBP labeled Petitioner a "Recidivist" and alerted other federal agencies of this designation by placing him on a watch list. *Id.* Petitioner was removed to pursuant to 42 U.S.C. § 265. *Id.* ¶ 6. Following his removal on September 24, 2022, Petitioner entered the United States at a time and place unknown to authorities. *Id.* ¶ 7.

Since his entry sometime after September 24, 2022, Petitioner has resided in Poughkeepsie, New York. Pet. ¶ 21. On September 25, 2025, ICE officers were conducting surveillance in Poughkeepsie related to a third-party with an outstanding order or removal when they observed a male subject matching the physical description of the third-party target get into a car outside of the third-party target's last known address. Franco Decl. ¶¶ 8-9. The officers then conducted a traffic stop,[1] which led to the discovery of Petitioner's Guatemalan consular card. *Id.* ¶¶ 9-10. A records check positively matched Petitioner as the individual on the recidivist watch list whom immigration authorities had previously encountered in July and September 2022. *Id.* ¶ 10.

In light of his prior illegal entries and Title 42 removal, the ICE officers determined that there was a high likelihood that Petitioner would escape before a warrant could be obtained. *Id*

---

[1] The circumstances of the traffic stop are disputed. Petitioner alleges that the officers pointed guns at him, pulled him out of his car, and immediately handcuffed him. Pet. ¶ 25. Petitioner additionally alleges that an ICE officer then reached into his car and searched his wallet without his consent. *Id.* Respondents, by contrast, allege that the officers merely approached the vehicle and requested identification. Franco Decl. ¶ 10.

¶ 11. Accordingly, the officers administratively arrested Petitioner without a warrant. *Id.* Following Petitioner's arrest, he was transferred to ICE's Newburgh Sub-Office for further processing. *Id.* ¶ 12. There, ICE served Petitioner with a Form I-862 Notice to Appear ("NTA") for removal proceedings under 8 U.S.C. § 1229a. *Id.* ¶ 13. The NTA charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and as an alien present in the United States without being admitted or paroled. *Id.*

From September 25, 2025, until October 1, 2025, Petitioner was detained at Orange County Jail in Goshen, New York. *Id.* ¶ 25. On October 1, 2025, ICE transferred Petitioner to the MDC, where he has remained since. *Id.* ¶¶ 26-27.

## PROCEDURAL HISTORY

On January 14, 2026, Petitioner commenced this action by filing a petition for a writ of habeas corpus. *See generally* Pet. That same day, Petitioner also filed a motion for a temporary restraining order and preliminary injunction, requesting his immediate release from custody and an order enjoining Respondent's from detaining him pending the Court's final adjudication of the Petition. *See* Motion for Temporary Restraining Order, Dkt. 2.

On January 15, 2026, the Court issued an order to show cause why the Petition should not be granted, thereby directing Respondents to file a return by January 20, 2026, and ordering the parties to appear before the Court for a hearing on January 23, 2026, at 10:30 a.m. *See* Order to Show Cause, Dkt. 9 (the "Order to Show Cause"). The Court additionally ordered Respondents not to remove Petitioner from this District "until further order of this Court." *Id.*

Respondents subsequently filed a motion for an extension of time to file a response to the Petition, *see* Letter from Respondents to the Court (Jan. 16, 2026), Dkt. 14, which the Court granted on January 19, 2026. In granting the extension, the Court also rescheduled the hearing to

3

January 26, 2026, at 10:00 a.m. *See* Order, dated January 19, 2026. The Court later rescheduled the hearing to January 27, 2026, at 10:00 a.m. due to inclement weather. *See* Order, dated January 22, 2026.

Respondents filed their response on January 22, 2026. *See* Memorandum of Law in Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Issued, Dkt. 15 (the "Opposition" or "Opp'n"). On January 23, 2026, Petitioner filed a motion for leave to file a reply. *See* Letter from Petitioner to the Court (Jan. 23, 2026), Dkt. 16. The Court granted Petitioner leave to file a reply on January 26, 2026, *see* Order, dated January 26, 2026, and Petitioner filed his reply that same day, *see* Reply in Further Support of Petitioner for a Writ of Habeas Corpus, Dkt. 17.

The Court held a hearing on the Order to Show Cause on January 27, 2026, at 10:00 a.m. *See generally* Transcript of Civil Cause for Order to Show Cause Before the Honorable Orelia E. Merchant United States District Judge (the "Transcript" or "Tr.").

**DISCUSSION**

Although Petitioner argues that his arrest violated the Fourth Amendment,[2] the Petition raises two principal issues: (1) whether Petitioner is detained under 8 U.S.C. § 1226 ("§ 1226") or 8 U.S.C. § 1225 ("§ 1225") and (2) whether Petitioner's due process rights have been violated.

**A. Statutory Basis for Petitioner's Detention**

The Court is bound by a long line of U.S. Supreme Court precedent. *See Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."); *Zadvydas v. Davis*, 533 U.S. 678, 693

---

[2] As the Court grants the Petition on other grounds, it does not reach the Fourth Amendment claim.

(2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (stating that § 1225(b) governs "aliens seeking admission into the country," whereas § 1226(a) governs "aliens already in the country" who are subject to removal proceedings). Thus, the Court's position on whether § 1226 or § 1225 applies in scenarios where a petitioner was detained after entering the country has not changed since deciding other 28 U.S.C. § 2241 immigration cases recently. *See, e.g.*, *J.U. v. Maldonado*, 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Artiga v. Genalo*, 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Lira Caceres v. Shanahan*, 26-CV-00016, 2026 WL 233215 (E.D.N.Y. Jan. 28, 2026); *Singh v. Maldonado*, 26-CV-00019, 2026 WL 233216 (E.D.N.Y. Jan. 29, 2026).

While this case is factually distinct from cases previously before this Court in that Petitioner entered the country illegally on multiple occasions and was removed pursuant to 42 U.S.C. § 265, *see* Franco Decl. ¶ 6, these factual distinctions have no bearing on the statutory authority for Petitioner's current detention. Regardless of Petitioner's past unsuccessful entries, Petitioner has nonetheless "effected an entry" into the United States since his Title 42 removal in September 2022, *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting *Zadvydas* 533 U.S. at 693), and therefore was "already in the country" when he was arrested, *see Jennings*, 583 U.S. at 289. Moreover, the statute pursuant to which Petitioner was removed, 42 U.S.C. § 265, is a public health statute that suspends entries and imports from designated places to prevent the spread of communicable diseases. *See generally* 42 U.S.C. § 265. It contains no language indicating that its removal authority has immigration implications. *Id.* Furthermore, Respondents do not cite any case or authority to support the proposition that Petitioner's past illegal entries and Title 42 removal mandate his current detention. *See generally* Opp'n.

The fact that Petitioner did not have contact with immigration officials upon entering the country after September 24, 2022, Franco Decl. ¶ 7, does not change the Court's view that § 1226 is applicable here. In having no entry point contact, Petitioner is similar to many other habeas petitioners who did not have contact with immigration officials upon entry and were still deemed subject to § 1226. *See, e.g.*, *R.P.L. v. Maldonado*, 25-CV-6886 (HG), 2025 WL 3731864, at *1 (E.D.N.Y. Dec. 26, 2025) ("[Petitioner's] arrest on September 18, 2025, is his first encounter with immigration authorities."); *Cuy Comes v. DeLeon*, 25 Civ. 9283 (AT), 2025 WL 3206491, at *1 (S.D.N.Y. Nov. 14, 2025) ("Prior to this interaction and subsequent detention, [petitioner] had no contact with immigration authorities in the United States."); *Campos v. DeLeon*, 25-CV-10099 (LJL), 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (same); *Rocano Buestan v. McShane*, 25-CV-8544 (JGLC), 2025 WL 3496361, at *1 (S.D.N.Y. Dec. 5, 2025) (same).

Accordingly, this Court joins the overwhelming majority of courts to find that detention of the nature at issue here cannot be upheld under § 1225. *See Barco Mercado v. Francis*, 25-CV-6582 (LAK), 2025 WL 3295903, at *4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases). Mandatory detention under § 1225 is not a valid basis for Petitioner's detention, and Petitioner is therefore subject to discretionary detention under § 1226. *See J.U.*, 2025 WL 2772765, at *4 (noting the mutual exclusivity of § 1225 and § 1226).

### B. Due Process

The Court now turns to whether ICE's detention of Petitioner violates his due process rights. The Fifth Amendment's Due Process Clause prevents the government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. "'It

is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025) ("Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." (citing *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018) (holding that "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.")).[3]

The Second Circuit has held that the *Mathews v. Eldridge* three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

---

[3] Respondents argue that Petitioner's detention comports with due process because he is "treated for constitutional purposes as if stopped at the border[.]" Opp'n at 21. However, this "entry fiction" doctrine, *id.* at 22, is neither relevant to the statutory analysis set out above nor applicable to the due process analysis. As other courts in this Circuit have explained, the entry fiction doctrine "dictates what *constitutional* rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted." *J.G.O. v. Francis*, 25-CV-7233 (AS), 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025). Whatever procedure Congress authorized is, under this doctrine, due process. *Id.* Here, however, the question is what process Congress authorized, so "even assuming that the entry fiction would apply," it does not affect the "*statutory* analysis." *Id.*

The first two factors favor Petitioner because his "[f]reedom from imprisonment" is at stake, *Zadvydas*, 533 U.S. at 690, and there is a significant risk of erroneous deprivation of that freedom without additional safeguards, *see Valdez*, 803 F. Supp. 3d at 218 (noting a "high" risk "of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings." (citing *Lopez*, 2018 WL 2932726, at *11)). Therefore, the instant *Mathews* inquiry turns on the third factor: Respondents' interest.

Respondents' interest in detaining "individuals under 8 [] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 803 F. Supp. 3d at 218 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). Here, Respondents concede that Petitioner does not have a criminal history, but they argue that he presents a flight risk given his "prior history of evading immigration laws" and "attempting to reenter the country after being removed[.]" Tr. at 27:1-12. In other words, Respondents contend that there "is no reason to believe that someone who continually does not follow directives to leave the country will follow directives to appear at a place and time." *Id.* at 27:23-28:1. The Court, however, fails to see the logic in that contention. Not only has Petitioner built a life in Poughkeepsie with his father by working in construction, Pet. ¶ 23, but his past failed attempts at entering the country do not necessarily mean he will not appear for removal proceedings. Accordingly, Respondents' argument that Petitioner is a flight risk lacks merit and, because Respondents have failed to present any evidence or even allege that Petitioner is a danger to the community, Respondents have failed to show a significant interest in Petitioner's detention.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's

liberty, the absence of any deliberative process in the form of a bond hearing, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Petition is granted. Respondents are ordered to immediately release Petitioner from custody. By February 6, 2026, Respondents shall certify compliance with this order by filing on the docket and noting specifically that Petitioner has been released.

SO ORDERED.

_/s/_
ORELIA E. MERCHANT
United States District Judge

February 6, 2026
Brooklyn, New York